1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                          **DISTRICT OF NEVADA**
8                                   * * *
9
10   SCOTT JOHNSON, et al.,
11          Plaintiffs,                          2:13-cv-00641-MMD-NJK
12   v.
13   JONATHAN BERNSTEIN, et al.,                 **REPORT & RECOMMENDATION OF**
                                                 **UNITED STATES MAGISTRATE**
14          Defendants.                          **JUDGE**
15

16          Pending before the Court is Defendant Jonathan Bernstein's Motion to Quash Service of

17   Process and Motion to Dismiss (Docket Nos. 71, 73), as well as Jonathan Bernstein, M.D., Ltd.

18   d/b/a/ Children's Specialty Center of Nevada, Annette Logan, Jeremy Logan, Jennifer

19   Buitrago-Ikeda, and Wendy Dahl's (the "Collective Defendants") Motion to Quash Service of

20   Process (Docket No. 81). These motions were referred to the Court by Local Rule IB 1-4 and 28

21   U.S.C. § 636(b)(1)(B). The Court finds these motions are properly resolved without oral argument.

22   *See* Local Rule 78-2.

23   **I.     BACKGROUND**

24          On April 16, 2013, Plaintiffs Christine Johnson, Scott Johnson, and Chad Johnson filed a

25   Complaint in this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Docket No.

26   1. Plaintiffs allege state law claims of medical malpractice and wrongful death against certain

27   defendants, including Defendant Bernstein and the Collective Defendants. *Id.* In their Complaint,

28   Plaintiffs allege that Decedent, Derek Bryce Johnson, a minor child, received negligent medical care

1   from certain defendants to this lawsuit including, but not limited to, Defendant Bernstein and the

2   Collective Defendants.

3       Defendant Bernstein's motion to dismiss seeks to dismiss Plaintiffs' Complaint with

4   prejudice, on the grounds that Plaintiffs failed to attach a medical expert affidavit as required under

5   Nevada law, and that the statute of limitations bars Plaintiffs' Complaint. Docket No. 73. The Court

6   has considered Defendant Bernstein's motion to dismiss, as well as the respective response and

7   reply. Docket Nos. 73, 115, 123. The Court has also considered Defendant Bernstein's motion to

8   quash and the Collective Defendants' motion to quash, as well as the respective response and replies.

9   Docket Nos. 71, 81, 115, 120, 122. For the reasons set forth below, the Court recommends that

10   Defendant Bernstein's motion to dismiss be **GRANTED** in part and **DENIED** in part. The Court

11   further recommends that Defendant Bernstein's motion to quash be **GRANTED**, and recommends

12   that the Collective Defendants' motion to quash be **GRANTED**.

13   **II.**    **DISCUSSION**

14       **A.**    <u>**Defendant Bernstein's Motion to Dismiss**</u>

15       In his motion to dismiss, Defendant Bernstein argues that Plaintiffs' Complaint must be

16   dismissed because (1) it was filed without a medical expert affidavit, contrary to Nevada law; and

17   (2) Plaintiffs' Complaint is barred by the statute of limitations. Docket No. 73, at 3-6.

18       Although Defendant Bernstein does not explicitly describe the procedural grounds for

19   dismissal in his briefing, the motion to dismiss falls under the aegis of Rule 12(b)(6) of the Federal

20   Rules of Civil Procedure. Rule 12(b)(6) provides for dismissal of a complaint for failure to state a

21   claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a

22   question of law. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). In

23   considering whether Plaintiffs have stated a claim upon which relief can be granted, all material

24   allegations in the complaint are accepted as true and are to be construed in the light most favorable

25   to the plaintiffs. *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). Allegations of a *pro se*

26   complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v.*

27   *Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*); *see also Hamilton v. Brown*, 630 F.3d 889, 893 (9th

28   Cir. 2011).

### 1. Requirement of a Medical Expert Affidavit

Chapter 41A of the Nevada Revised Statutes (NRS) governs lawsuits for medical malpractice. NRS § 41A.100, which is Nevada's *res ipsa loquitur*[1] statute with respect to claims for medical malpractice, provides:

1.   Liability for personal injury or death is not imposed upon any provider of medical care based on alleged negligence in the performance of that care unless evidence consisting of expert medical testimony,[2] material from recognized medical texts or treatises or the regulations of the licensed medical facility wherein the alleged negligence occurred is presented to demonstrate the alleged deviation from the accepted standard of care in the specific circumstances of the case and to prove causation of the alleged personal injury or death, <u>except that such evidence is not required and a rebuttable presumption that the personal injury or death was caused by negligence arises where evidence is presented that the personal injury or death occurred in any one or more of the following circumstances</u>:

    (a)    A foreign substance other than medication or a prosthetic device was unintentionally left within the body of a patient following surgery;

    (b)    An explosion or fire originating in a substance used in treatment occurred in the course of treatment;

    (c)    An unintended burn caused by heat, radiation or chemicals was suffered in the course of medical care;

    (d)    An injury was suffered during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto; or

    (e)    A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of a patient's body.

Nev. Rev. Stat. Ann. § 41A.100 (2014) (emphasis added).

In her response in opposition to Defendant Bernstein's motion to dismiss, Plaintiff Christine Johnson urges the Court to apply Nevada's doctrine of *res ipsa loquitur* as the standard of review

---

[1] Literally, "the thing speaks for itself." Black's Law Dictionary (9th ed. 2009). The doctrine of *res ipsa loquitur* provides that, in some circumstances, the mere fact of an accident's occurrence raises an inference of negligence that establishes a *prima facie* case. *Id.*

[2] NRS § 41A.100(2-3) states that, "[e]xpert medical testimony provided pursuant to subsection 1 may only be given by a provider of medical care who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged negligence[,]" and that a "'provider of medical care' means a physician, dentist, registered nurse or a licensed hospital as the employer of any such person."

3

1   to determine whether a rebuttable presumption of negligence is applicable to this case.  Docket No.

2   115, at 39.  The statute is clear, however, that the doctrine of *res ipsa loquitur* is only applicable in

3   the context of a medical malpractice action where the facts as alleged describe one of the factual

4   scenarios enumerated in NRS § 41A.100(a-e).  In their Complaint, Plaintiffs do not allege facts

5   corresponding to any of the scenarios described in NRS § 41A.100(a-e).  *See* Docket No. 1.

6   Accordingly, the Court concludes that the facts as alleged in Plaintiffs' Complaint therein do not

7   create a rebuttable presumption of negligence pursuant to NRS § 41A.100.[3]  Plaintiffs' Complaint

8   therefore requires an expert affidavit pursuant to NRS § 41A.071, which provides:

9       If an action for medical malpractice or dental malpractice is filed in the district court,
        the district court shall dismiss the action, without prejudice, if the action is filed
10      without an affidavit, supporting the allegations contained in the action, submitted by
        a medical expert who practices or has practiced in an area that is substantially similar
11      to the type of practice engaged in at the time of the alleged malpractice.

12  Nev. Rev. Stat. Ann. § 41A.071 (2014).

13                          a.      The Esparza Letter

14      In his motion to dismiss, Defendant Bernstein states that Plaintiffs' Complaint must be

15  dismissed because it "fails to attach an affidavit in support of the Complaint in accordance with NRS

16  41A.071."  Docket No. 73, at 6.  In response, Plaintiff Christine Johnson asserts that a letter from

17  Samuel D. Esparza, M.D., dated April 2, 2013, to the Nevada State Board of Medical Examiners (the

18  "Esparza Letter") (Docket No. 115-1),[4] constitutes an affidavit that satisfies the requirements of NRS

19  § 41A.071.  Docket No. 115, at 37.  In reply, Defendant Bernstein argues that the Esparza Letter does

20  not constitute an affidavit for purposes of NRS § 41A.071, because (1) it does not contain any

21  allegations which relate to the care and treatment Defendant Bernstein provided to Decedent; (2) it

22  lacks the required specificity with respect to medical causation from which a trier of fact could

23  

24  _____

    [3]

25      The Court has examined Plaintiffs' Complaint with the leniency required in *pro se* cases.
    *See Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003) (acknowledging that
26  courts must construe *pro se* motions and pleadings liberally).

    [4]
27      The Esparza Letter is not attached to Plaintiffs' Complaint.  *See* Docket No. 1.  The
    Esparza letter is attached as Exhibit 1 to Plaintiffs' response in opposition to Defendant
28  Bernstein's motion to dismiss.  Docket No. 115-1.

                                        4

1  conclude that Defendant Bernstein breached "the standard of care in providing care and treatment

2  to Decedent"; and (3) the Esparza Letter does not have a jurat,[5] and "does not contain a statement

3  that [Dr. Esparza's] letter is made under penalty of perjury."  Docket 123, at 6-7.

4       "An affidavit is a written statement sworn to by the declarant before an officer authorized

5  to administer oaths."  *Buckwalter v. Dist. Court*, 234 P.3d 920, 921 (Nev. 2010) (internal quotation

6  and citation omitted).  To prove that an affidavit was made under oath, it typically includes a jurat.

7  *MountainView Hosp., Inc. v. Eighth Judicial Dist. Court*, 273 P.3d 861, 865 (Nev. 2012).  In

8  *MountainView Hospital*, the Nevada Supreme Court held that, in order to satisfy NRS § 41A.071's

9  affidavit requirement, an affidavit must contain either a jurat, or "the plaintiff may show by other

10  evidence that the expert's statements were made under oath or constitute an unsworn declaration

11  made under penalty of perjury."  *Id.*, *quoting Buckwalter*, 234 P.3d at 922.  As Defendant Bernstein

12  observes, the Esparza Letter does not contain a jurat, nor has Plaintiff Christine Johnson

13  demonstrated that Dr. Esparza's statements "were made under oath or constitute an unsworn

14  declaration made under penalty of perjury."  *MountainView Hosp.*, 273 P.3d at 865; Docket No. 123,

15  at 6-7.  The Court accordingly concludes that the Esparza Letter is not an affidavit under Nevada

16  law.[6]

17

18  _____

    [5]

19  A jurat is a "certification added to an affidavit or deposition stating when and before what
   authority the affidavit or deposition was made."  Black's Law Dictionary (9th ed. 2009).  ("[T]he

20  'jurat[]' is essential, not as a part of the affidavit, but as official evidence that the oath was taken
   before the proper officer").  *Lutz v. Kinney*, 46 P. 257, 258 (Nev. 1896).

21

    [6]

22  The Court makes no finding with respect to Defendant Bernstein's arguments that the

23  Esparza Letter does not constitute an affidavit owing to (1) the supposed lack of allegations in
   the Esparza Letter relating to the care Defendant Bernstein provided to Decedent, or (2) the

24  alleged lack of specificity in the Esparza Letter with respect to whether Defendant Bernstein
   breached the standard of care in providing care and treatment to Decedent.  *See* Docket 123, at 6.

25  Instead, the Court rules on the narrower ground that the Esparza Letter is not an affidavit under
   Nevada law because it was not "made under oath" and does not "constitute an unsworn

26  declaration made under penalty of perjury."  *MountainView Hosp.*, 273 P.3d at 865; *accord,*

27  *Hartford Accident & Indem. Co. v. Dennler*, 261 F. Supp. 534, 536 (D. Nev. 1966) (Federal
   courts interpreting state law should restrict their decisions "to the narrowest issue upon which the

28  instant litigation may be effectively determined").

b.      Dismissal under Nevada Law

Since Plaintiffs' Complaint was filed without a supporting medical expert affidavit, and there has been no finding of a rebuttable presumption of negligence pursuant to NRS § 41A.100, Nevada law requires the Court to "dismiss the action, without prejudice[.]"  NRS § 41A.071; *see also Washoe Med. Ctr. v. Second Judicial Dist. Court*, 148 P.3d 790, 793 (Nev. 2006) ("NRS 41A.071 states that a complaint filed without an expert affidavit shall be dismissed ... [t]he Legislature's choice of the words 'shall dismiss' instead of 'subject to dismissal' indicates that the Legislature intended that the court have no discretion with respect to dismissal and that a complaint filed without an expert affidavit would be void and must be automatically dismissed").  The Court must initially determine, however, whether Nevada substantive law controls in this diversity action.  *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 534 (9th Cir. 2011); *accord Baird v. Celis*, 41 F. Supp.2d 1358 (N.D. Ga. 1999) (declining to apply state law upon finding a medical malpractice affidavit requirement is procedural and conflicts with Rule 8 of the Federal Rules of Civil Procedure), *citing Erie R. R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Where state law claims are brought in federal court based on diversity jurisdiction or pursuant to supplemental jurisdiction, the Court must choose whether to apply state or federal law.  *See, e.g., Las Vegas Sands*, 632 F.3d at 534.  Under *Hanna v. Plumer*, 380 U.S. 460, 470-74 (1965), the court first inquires whether a state law directly collides with federal law.  If there is no direct collision, the court follows *Erie* and applies state law on substantive issues and federal law on procedural issues.  *Id*.  If there is a direct collision, federal law applies.  *Id*.  In considering the substantive/procedural distinction, the Court is guided by "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."  *Id*., at 468.

Each federal court to consider Nevada's medical expert affidavit requirement has held that plaintiffs must comply with that requirement.  *Jones v. Neven*, 2008 WL 2074003, at *4 (D. Nev. May 14, 2008) (applying Nevada law and dismissing claim without prejudice, without considering whether the state law applies in federal court); *Estes v. So. Nev. Adult Mental Health*, 2007 WL 1199343 (D. Nev. Apr. 19, 2007) (same); *Butts v. Univ. Health Servs., Inc.*, 2006 WL 1877127 (D. Nev. July 6, 2006) (briefly considering the issue and then applying state law).  While none of these

decisions discussed the choice of law issues in detail, the application of state law in those cases implicitly found that the affidavit requirement (1) does not collide with federal law; and (2) is a substantive state law, applicable in federal court.[7]  Moreover, in a case interpreting an older version of Nevada's medical malpractice statute, the Ninth Circuit concluded that the state's evidentiary rule regarding admissibility of the findings of a malpractice screening panel applied in federal court because it was a core component of Nevada's substantive scheme. *Wray v. Gregory*, 61 F.3d 1414, 1418 (9th Cir. 1995).

The medical expert affidavit requirement of NRS § 41A.071 is similar to the other special malpractice requirements found substantive by federal courts in the Ninth Circuit.  Allowing Nevada medical malpractice claims to proceed in federal court without an affidavit is likely to result in forum shopping, because a frivolous case will proceed without expert scrutiny in federal court.  Moreover, the Nevada rule represents a substantive judgment that medical malpractice claims must be supported by expert testimony. *See, e.g.*, NRS § 41A.100.  Accordingly, the Court concludes that the requirement applies in federal court, and recommends that Plaintiffs' state law medical malpractice and wrongful death claims be dismissed without prejudice for failure to provide the required affidavit.

c.    Leave to Amend

The Court now examines whether grounds exist to allow Plaintiffs leave to amend their Complaint and file the required medical expert affidavit.  Under Nevada law, a malpractice complaint filed without the affidavit is a legal nullity and thus may not be amended. *Washoe Med.*

---

[7]

These decisions are also consistent with those of other district courts within the Ninth Circuit that have considered special state requirements in medical malpractice actions.  Federal district courts interpreting this provision have uniformly held it applies in federal court.  Thus, in Washington state, plaintiffs must also file an expert's certificate of the merit of a medical malpractice claim. *See Gobin v. Dept. of the Army W. Regional Command Madigan Army Med. Ctr.*, 2008 WL 828944 (W.D. Wash. Mar. 27, 2008); *Abear v. Teveliet*, 2006 WL 3813560 (W.D. Wash. Dec. 21, 2006).  Similarly, under California law, a plaintiff must provide notice to the doctor-defendant 90 days before bringing a medical malpractice claim.  Courts considering the rule have found it applies in federal court. *See Rosado v. Alameida*, 497 F. Supp.2d 1179, 1195 (S.D. Cal. 2007) (applying state law); *Jett v. Penner*, 2007 WL 715533 (E.D. Cal. Mar. 8, 2007) (same).

1   *Ctr.*, 148 P.3d at 795 ("[b]ecause a void complaint does not legally exist, ... an NRS 41A.071 defect

2   cannot be cured through amendment"). Thus, should the Court follow Nevada law, it must dismiss

3   Plaintiffs' Complaint without leave to amend. The practical result would be that Plaintiffs would

4   be barred from filing a new complaint with an appropriate affidavit because the statute of limitations

5   has likely expired in this action. *See* Docket No. 73, at 5-6.

6       Federal courts "freely give leave [to amend] when justice so requires." Fed. R. Civ. P.

7   15(a)(2); *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir.

8   2013). Leave to amend is granted with "extreme liberality." *Morongo Band of Mission Indians v.*

9   *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048,

10  1051 (9th Cir. 2003) (leave to amend is "to be applied with extreme liberality"). "If the underlying

11  facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff]

12  ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178,

13  182 (1962).

14      In the Ninth Circuit, courts consider five factors when determining whether to grant leave:

15  (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5)

16  whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067,

17  1077 (9th Cir. 2004). The analysis focuses on the bad faith of the party seeking to amend the

18  complaint, as well as the prejudice to the other party. *Johnson v. Mammoth Recreations, Inc.*, 975

19  F.2d 604, 609 (9th Cir. 1992); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716,

20  737 (9th Cir. 2013).

21      The first question under *Erie* and *Hanna* is whether these rules are in direct conflict with

22  Nevada law. *See Hanna*, 380 U.S. at 470-74. In this case, if the Court applied the rule articulated

23  by the Nevada Supreme Court in *Washoe Medical Center*, Plaintiffs' medical malpractice and

24  wrongful death claims would automatically be dismissed without leave to amend. *Washoe Med.*

25  *Ctr.*, 148 P.3d at 793. If the Court applied Federal Rule of Civil Procedure 15, the Court would only

26  deny leave to amend upon a showing of prejudice, futility, undue delay or bad faith. There is no

27  evidence that Plaintiffs' failure to attach a medical expert affidavit to their Complaint was

28  undertaken in bad faith, nor have Plaintiffs previously amended their Complaint. In addition, the

8

1    Court cannot conclude that undue prejudice would accrue to defendants in this case, where, as here,

2    defendants are fully aware of the substance of Plaintiffs' claims.  Moreover, a proper affidavit would

3    cure the defect of the pleading, and would not cause undue delay.   In short, none of the

4    circumstances counseling in favor of denying leave to amend is present in this case.  *Johnson*, 356

5    F.3d at 1077.  The Court would therefore grant leave to amend pursuant to Federal Rule of Civil

6    Procedure 15.  Accordingly, the state and federal rules directly conflict.

7        Where federal and state law directly conflict, the Court applies federal law on procedural

8    matters.  *Hanna*, 380 U.S. at 470-74; *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th

9    Cir. 2001) ("[p]rocedural state laws are not used in federal court if to do so would result in a direct

10   collision with a Federal Rule of Civil Procedure").  The propriety of amendment pursuant to Federal

11   Rule of Civil Procedure 15 is a procedural matter.  *Verizon Del., Inc. v. Covad Commc'ns. Co.*, 377

12   F.3d 1081, 1091 (9th Cir. 2004), *citing Metabolife*, 264 F.3d at 845-46; *see also Robert Half Intern.*

13   *Inc. v. Murray*, 2008 WL 2610793, *4-5 (E.D. Cal. 2008) (applying Fed. R. Civ. P. 15 in the face

14   of a conflict with the state statute), *citing Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415

15   (1996).

16       The court's analysis in *Burrows v. Redbud Cmty. Hosp. Dist.*, 188 F.R.D. 356 (N.D. Cal.

17   1997) is instructive.  In *Burrows*, the court considered California's law that any amendments to a

18   complaint adding a claim for exemplary damages must be made within two years of filing the

19   malpractice action.  The court found this rule procedural because it "was essentially a method of

20   managing or directing a plaintiff's pleadings rather than a determination of substantive rights."  *Id*.,

21   at 361, *citing Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341, 1352 (N.D. Cal. 1997).

22       Similarly, the Nevada rule prohibiting amendment of a complaint filed without a medical

23   expert affidavit is procedural because it relates to the "managing or directing of a plaintiff's

24   pleadings."  *Id*.  Accordingly, the Court recommends applying Rule 15 of the Federal Rules of Civil

25   Procedure, and allowing Plaintiffs leave to amend their Complaint to attach the required affidavit.

26   No reason exists to deny leave to amend at this stage of the case, especially where, as here,

27   defendants are fully aware of the substance of Plaintiffs' claims.

28   //

9

**2.      *Statute of Limitations***

In Nevada, the statute of limitations applicable to medical malpractice actions such as the case at bar is codified at NRS § 41A.097, which provides, in relevant part:

> 2.      Except as otherwise provided in subsection 3, an action for injury or death against a provider of health care may not be commenced more than 3 years after the date of injury or 1 year after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:
>
> (a)      Injury to or the wrongful death of a person occurring on or after October 1, 2002, based upon alleged professional negligence of the provider of health care;
>
> (b)      Injury to or the wrongful death of a person occurring on or after October 1, 2002, from professional services rendered without consent; or
>
> (c)      Injury to or the wrongful death of a person occurring on or after October 1, 2002, from error or omission in practice by the provider of health care.
>
> 3.      This time limitation is tolled for any period during which the provider of health care has concealed any act, error or omission upon which the action is based and which is known or through the use of reasonable diligence should have been known to the provider of health care."

Nev. Rev. Stat. Ann. § 41A.097(2-3) (2014).

NRS § 41A.097(2)'s discovery date may be determined as a matter of law only when the evidence irrefutably demonstrates that a plaintiff has been put on inquiry notice. *Day v. Zubel*, 922 P.2d 536, 539 (Nev. 1996) ("[t]he appropriate accrual date for the statute of limitations is a question of law only if the facts are uncontroverted"); *see also Bemis v. Estate of Bemis*, 967 P.2d 437, 440 (Nev. 1998) ("Dismissal on statute of limitations grounds is only appropriate 'when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered' the facts giving rise to the cause of action"), *quoting Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir. 1992).

In *Massey v. Litton*, 669 P.2d 248 (Nev. 1983), the Nevada Supreme Court held that a plaintiff "discovers" his injury "when he knows or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on inquiry notice of his cause of action." 669 P.2d at 252.  While difficult to define in concrete terms, a person is put on "inquiry notice" when

1  he or she should have known of facts that "would lead an ordinarily prudent person to investigate

2  the matter further."  Black's Law Dictionary (9th ed. 2009).  The *Massey* court instructed that these

3  facts need not pertain to precise legal theories the plaintiff may ultimately pursue, but merely to the

4  plaintiff's general belief that someone's negligence may have caused his or her injury.  669 P.2d at

5  252.  Therefore, in the present matter, Plaintiffs "discovered" their legal injury at a point when they

6  had facts before them that would have led an ordinarily prudent person to investigate further into

7  whether Decedent's death may have been caused by negligence.

8      Plaintiffs filed suit on April 16, 2013.  Docket No. 1.  Thus, absent any tolling of subsection

9  2's one-year discovery period, Plaintiffs would have had to discover the facts giving rise to the cause

10  of action no earlier than April 16, 2012.  For his part, Defendant Bernstein maintains that the "statute

11  of limitations on Plaintiffs' medical malpractice claim was triggered on December 6, 2011,

12  Decedent's date of death, and expired on December 6, 2012."  Docket No. 123, at 9.  In her response,

13  Plaintiff Christine Johnson asserts that she became "aware of the negligence by acquiring the official

14  medical records ... of decedent" on July 3, 2012.  Docket No. 115, at 28-29.  Following her review

15  of those medical records, Plaintiff Christine Johnson states that she had "positive proof that

16  diagnosis [sic] were made that were never relayed to Plaintiff while Decedent was alive and being

17  treated, falsifying of records,[8] illegal billing for profit, etc."  *Id.*, at 29.

18      Contrary to Defendant Bernstein's assertion that the statute of limitations was triggered on

19  December 6, 2011, it is unlikely that an ordinarily prudent person would begin investigating whether

20  a cause of action might exist on the same day that her child had passed away.  Accordingly, the

21  evidence does not irrefutably demonstrate that Plaintiffs discovered their alleged legal injury on

22

23      [8]

24      This allegation of falsification of records alleges facts that fall within the purview of
    subsection 3 of NRS § 41A.097 ("[t]his time limitation is tolled for any period during which the
25  provider of health care has concealed any act, error or omission upon which the action is based").
    The Court makes no finding with respect to whether the statute of limitations is tolled in this
26  case.  Rather, the Court finds that narrower grounds support denying Defendant Bernstein's
    motion to dismiss pursuant to NRS § 41A.097(2); namely, that there has been no showing that
27  the evidence demonstrates as a matter of law that Plaintiffs were put on inquiry notice prior to
    their review of Decedent's official medical records on July 3, 2012.  *See Hartford Accident &*
28  *Indem. Co.*, 261 F. Supp. at 536.

1    December 6, 2011.  *Bemis*, 967 P.2d at 440.  However, the evidence does irrefutably demonstrate

2    that Plaintiffs were put on inquiry notice no later than July 3, 2012 - the date they reviewed

3    Decedent's official medical records.  By this point at the latest, Plaintiffs had access to facts that

4    would have led an ordinarily prudent person to investigate further into whether their alleged injury

5    may have been caused by someone's negligence.  *Massey*, 669 P.2d at 252.  Thus, as a matter of law,

6    the evidence irrefutably demonstrates that Plaintiffs were put on inquiry notice of their potential

7    cause of action no later than July 3, 2012.  *Bemis*, 967 P.2d at 440.  As described above, Plaintiffs

8    filed their Complaint on April 16, 2013.

9         Accordingly, and there having been no demonstration as a matter of law that Plaintiffs were

10   put on inquiry notice of their potential cause of action prior to July 3, 2012, the Court recommends

11   denying the portion of Defendant Bernstein's motion to dismiss that asserts that Plaintiffs'

12   Complaint is barred by the statute of limitations.

13        **B.       Defendant Bernstein's and the Collective Defendants' Motions to Quash**

14        The docket in this case reflects that Plaintiffs attempted to effectuate service of process on

15   Defendant Bernstein and each of the Collective Defendants in March of 2014.  Docket Nos. 52, 59,

16   63.  A proof of service dated March 26, 2014, and filed with the Court on March 31, 2014, reflects

17   that Plaintiffs' process server provided copies of the Summonses and Complaint to an individual

18   identified in the proof of service as "Christine Tonn (Risk Management)," at the address for the

19   Children's Specialty Center of Nevada.[9]  Docket No. 52.  This proof of service identifies the

20   following defendants as having been served: Jonathan Bernstein, Alan Ikeda, Annette Logan, Jeremy

21   Logan, and "Mary Warren[10] dba Children's Specialty."  *Id.*  The docket also reflects that the

22   summonses for Defendants Wendy Dahl and Jennifer Buitrago-Ikeda were returned unexecuted.

23   Docket Nos 59, 63.

24

---

25        [9]

26        Children's Specialty Center of Nevada is located at 3121 South Maryland Parkway, Suite
     302, Las Vegas, Nevada, 89101.  Docket No. 81, at 2.

27        [10]

28        "Mary Warren" is incorrectly identified; the correct name of this defendant is "Jonathan
     Bernstein, M.D., Ltd. d/b/a/ Children's Specialty Center of Nevada."  Docket No. 81, at 2.

1         A Rule 12(b)(5) motion is the proper vehicle for challenging the "insufficiency of service of

2    process." *See* Fed. R. Civ. P. 12(b)(5). "A federal court does not have jurisdiction over a defendant

3    unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists v.*

4    *Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Objections to the validity of

5    service of process must be specific and must point out in what manner the plaintiff has failed to

6    satisfy the requirements for proper service. *See O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394,

7    1400 (7th Cir. 1993). However, once service of process is properly challenged, "the party on whose

8    behalf [service] is made must bear the burden of establishing its validity." *Aetna Bus. Credit, Inc.*

9    *v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981); *see also Brockmeyer*

10   *v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (same). While the court should give the service

11   requirements of Rule 4 a liberal and flexible construction, a district court also has broad discretion

12   to either dismiss an action entirely for failure to effect service or to quash the defective service and

13   permit re-service. *See Jones v. Auto. Club of S. Cal.*, 26 F. App'x 740, 742 (9th Cir. 2002); *see also,*

14   *e.g., SHJ v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006), *citing Stevens v.*

15   *Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976) ("the choice between dismissal and

16   quashing service of process is in the district court's discretion").

17        Proper service of a corporate entity should be in accordance with Fed. R. Civ. P. 4(h).

18   Pursuant to Fed. R. Civ. P. 4(h), a corporation may be served either "by delivering a copy of the

19   summons and of the complaint to an officer, a managing or general agent, or any other agent

20   authorized by appointment or by law to receive service of process," or in the manner prescribed by

21   the state law in which the district court is located. Under Nevada law, if the suit is against an entity

22   formed under Nevada law or registered to do business in the state, service may be accomplished by

23   serving "the registered agent thereof or if the entity ... is (i) a corporation, to any officer thereof[.]"

24   Nev. R. Civ. P. 4(d)(1). Nevada law provides a separate means whereby service can be

25   accomplished by delivering a copy of the summons and complaint to the Nevada Secretary of State -

26   and providing the appropriate affidavit as set forth in Nev. R. Civ. P. 4(d)(1) - if service cannot be

27   effectuated on the registered agent or an officer of the corporate entity.

28   //

1    Here, Plaintiffs attempted to effectuate service of process on the Children's Specialty Center

2    of Nevada through Christine Tonn.  Docket No. 52.  As the Collective Defendants observe in their

3    motion, however, "Ms. Tonn is not a registered officer of Children's Specialty Center nor is she a

4    managing or general agent, or any other agent authorized by appointment or law to receive service

5    of process on behalf of the corporation."  Docket No. 81, at 3.  The record also reflects that Plaintiffs

6    made no attempt to serve the Children's Specialty Center of Nevada by delivering a copy of the

7    summons and complaint to the Nevada Secretary of State.

8    In his motion to quash, Defendant Bernstein argues that he was not properly served in his

9    individual capacity because Plaintiffs failed to comport with Fed. R. Civ. P. 4(e)[11] - which sets forth

10   the specific requirements for personal service upon an individual - in that "service for Defendant was

11   effectuated on Christine Tonn."  Docket No. 71, at 3.  Defendant Bernstein states, and Plaintiff

12   Christine Johnson does not allege otherwise in her response, that Christine Tonn is "an employee

13   not authorized to accept service on [Defendant Bernstein's] behalf."  Docket No. 122, at 5.

14   Defendant Bernstein concludes that "[s]ervice of process on Defendant Bernstein was not proper and

15   must be quashed[,]" and he asks the Court to "[d]ismiss Defendant Bernstein with prejudice for

16   Plaintiffs' failure to serve Defendant Bernstein[.]"  *Id.*, at 6-7.

17   In their motion to quash, the Collective Defendants likewise argue that Plaintiffs' attempt to

18   serve individual defendants Annette Logan and Jeremy Logan by delivering the Summonses and

19   Complaint to Christine Tonn fails.  Docket No. 81, at 3-6.  The Collective Defendants state that,

20   "Ms. Tonn was not and is not an authorized agent to receive service of process on behalf of Annette

21   //

22

23   [11]

24   Rule 4(e) provides: "Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual - other than a minor, an incompetent person, or a person whose waiver has been filed - may be served in a judicial district of the United States

25   by: (1) following state law for serving a summons in an action brought in courts of jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the

26   following: (A) delivering a copy of the summons and of the complaint to the individual

27   personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an

28   agent authorized by appointment or by law to receive service of process."

Logan and Jeremy Logan." *Id.*, at 3.  In addition, the Collective Defendants correctly note that "the summons for [defendants] Jennifer Buitrago-Ikeda and Wendy Dahl were returned unexecuted." *Id.*

While "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint," *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984), "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction" absent substantial compliance with its requirements. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).  Consequently, the Court finds that Plaintiffs have not met their burden to demonstrate service was proper with respect to Jonathan Bernstein, M.D., Ltd. d/b/a/ Children's Specialty Center of Nevada.  The Court also concludes that Plaintiffs have not met their burden to demonstrate service was proper with respect to the following individual defendants: Jonathan Bernstein, Annette Logan, Jeremy Logan, Jennifer Buitrago-Ikeda, and Wendy Dahl.

The Court recommends exercising its discretion to quash service under Rule 12(b)(5), rather than dismiss the case.  *See, e.g.*, *Patel-Julson v. Paul Smith Las Vegas, Inc.*, 2013 WL 1752897 (D. Nev. Apr. 23, 2013), *citing Issaquah School Dist. No. 411*, 470 F.3d at 1293.  The Court further recommends that Plaintiffs be given the opportunity to serve, cure the error in service, or request waiver[12] of service with respect to Defendant Bernstein and each of the Collective Defendants.

## RECOMMENDATION

**IT IS THE RECOMMENDATION** of the Court that Defendant Bernstein's motion to quash (Docket No. 71) be **GRANTED**.

**IT IS THE RECOMMENDATION** of the Court that Defendant Bernstein's motion to dismiss (Docket No. 73) be **GRANTED** in part, and **DENIED** in part.  The Court recommends that the portion of Defendant Bernstein's motion to dismiss which seeks to dismiss Plaintiffs' medical malpractice and wrongful death claims for failure to include a medical expert affidavit be **GRANTED**.  The Court recommends that the portion of Defendant Bernstein's motion to dismiss //

---

[12]Pursuant to Fed. R. Civ. P. 4(d).

which seeks to dismiss Plaintiffs' Complaint on the ground that it is barred by the statute of limitations be **DENIED**.

      **IT IS THE RECOMMENDATION** of the Court that the Collective Defendants' motion to quash (Docket No. 81) be **GRANTED**.

      The Court **FURTHER RECOMMENDS** that:

(1)    Plaintiffs' claims for medical malpractice and wrongful death be dismissed without prejudice;

(2)    Plaintiffs be given leave to amend the Complaint to provide the affidavit required by NRS § 41A.071, within thirty days of the date of any order adopting this Report and Recommendation;

(3)    Service of the Summons and Complaint be quashed pursuant to Rule 12(b)(5) with respect to the following defendants: Defendant Jonathan Bernstein, Defendant Jonathan Bernstein, M.D., Ltd. d/b/a/ Children's Specialty Center of Nevada, Defendant Annette Logan, and Defendant Jeremy Logan;

(4)    Plaintiffs be given leave to cure the error in service or request waiver of service with respect to Defendant Jonathan Bernstein, Defendant Jonathan Bernstein, M.D., Ltd. d/b/a/ Children's Specialty Center of Nevada, Defendant Annette Logan, and Defendant Jeremy Logan;

(5)    Plaintiffs be given leave to serve or request waiver of service with respect to Defendant Jennifer Buitrago-Ikeda and Defendant Wendy Dahl.

<u>**NOTICE**</u>

      Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District

//

16

Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: July 31, 2014.

_____

NANCY J. KOPPE
United States Magistrate Judge

17